THOMAS HART,

Plaintiff,

VERSUS

CAROLYN COLVIN, COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**MEMORANDUM AND ORDER**
September 30, 2014

JOSEPH F. BIANCO, District Judge:

Plaintiff Thomas Hart ("Hart" or "plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("SSA"), challenging the final decision of the Commissioner of Social Security ("defendant" or "Commissioner") denying plaintiff's application for disability insurance benefits for the period of June 19, 2008, through July 5, 2010. An Administrative Law Judge ("ALJ") found that, until July 6, 2010, plaintiff had the residual functional capacity to perform sedentary work of a simple and unskilled nature, could perform a significant number of jobs in the national economy, and, therefore, was not disabled. The Appeals Council denied Hart's request for review.

The Commissioner now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff opposes the Commissioner's motion and cross-moves for judgment on the pleadings or, in the alternative, a remand.

Plaintiff argues that the ALJ erred by failing to accord the proper weight to the opinion of plaintiff's treating physician, and, relatedly, by failing to recontact the treating physician before assessing the weight of that opinion.

For the reasons set forth below, the cross-motions for judgment on the pleadings are denied, but plaintiff's motion to remand is granted. Accordingly, the case is remanded to the ALJ for further proceedings consistent with this Memorandum and Order. Remand is warranted because the ALJ failed to recontact the treating physician, Dr. Kioomars Moosazadeh. In particular, the ALJ gave no weight to the treating physician's opinion that plaintiff was totally disabled and could not perform even sedentary work at least as of April 2010, because that opinion included no objective testing results or findings to support its conclusions. In other words, it is well settled that the ALJ must recontact the treating physician where, as here, the physician's information is determined to be inadequate to determine whether the

claimant is disabled (or the onset date of disability). Thus, although there is evidence in the record from other doctors to support the ALJ's finding, the ALJ should have recontacted the treating physician, Dr. Moosazadeh, for clarification of the reasons for his opinion before deciding to disregard it for lack of specific clinical findings. Accordingly, a remand on that issue is warranted.

## I. BACKGROUND

### A. Factual Background

The following summary of the relevant facts is based upon the Administrative Record ("AR") developed by the ALJ. A more exhaustive recitation of the facts is contained in the parties' submissions to the Court and is not repeated herein. The Court focuses on the period before July 6, 2010.

#### 1. Plaintiff's Personal History

Hart suffered a work-related injury on June 19, 2008, when he injured his neck, arm, and shoulder while closing a train window that jammed. (AR at 72–77.) He was 44 years old. (*Id.* at 13, 188.) At the time of his injury, and for 18 years prior, Hart worked as a subway conductor for the New York Transit Authority. (*Id.* at 70–71, 203.) His duties included public safety, preparing trains for services, and operating the doors. (*Id.* at 204.)

Plaintiff's highest level of education is high school, and he has no job or vocational training. (*Id.* at 207.) He lives alone in his apartment. (*Id.* at 64–65.) As of February 2011, plaintiff, who is 5'10" tall, weighed 285 pounds, down from a high of 300-plus pounds in 2009. (*Id.* at 65–66.) His daily routine involves getting up at 10:00 or 11:00 a.m. and doing "virtually nothing" all day. (*Id.* at 89, 96.) He does not shop for himself and has his groceries delivered, and his family cleans for him. (*Id.* at 89–90.) He cannot sleep well due to the constant pain. (*Id.* at 83, 88.)

#### 2. Plaintiff's Medical History

Dr. Kioomars Moosazadeh examined plaintiff on July 8, 2008. (*Id.* at 315.) Dr. Moosazadeh found that Hart was alert and oriented, with an appropriate affect and mood. (*Id.*) Hart had paravertebral tenderness in the cervical spine, and spasms in his neck and left lower extremity. (*Id.*) An axial compression test was positive, and a Spurling test was negative. (*Id.*) The left shoulder was tender in the subacromial and anterior glenohumeral spaces, rotator cuff strength was decreased, and an impingent sign was positive. (*Id.*) Lower back flexibility was decreased, to 30 degrees of forward flexion and 15 degrees of extension. (*Id.*) An x-ray of the cervical spine showed reversal of normal lordosis, age-appropriate changes in the lower back, and no bone pathology. (*Id.*) Dr. Moosazadeh assessed a cervicolumbar spine sprain/strain, but he ruled out a herniated disc or radiculopathy. (*Id.* at 316.) He also diagnosed a left shoulder sprain/strain, traumatic impingement, and rotator cuff tear. (*Id.* at 316.) He concluded that "[t]he patient remains disabled from his employment." (*Id.*) There is no evidence in the AR that Dr. Moosazadeh saw Hart again until March 2009. (*See id.* at 241.)

On July 22, 2008, Dr. Louis McIntyre, an independent medical examiner, saw plaintiff in connection with a workers' compensation claim. (*Id.* at 252.) Motor testing was 3 of 5 in the left upper extremity and 4 of 5 in the right lower extremity. (*Id.* at 253.) Reflexes were normal, and sensation was intact. (*Id.*) Dr. McIntyre diagnosed a cervical strain, a lumbar strain, and a left shoulder strain. (*id.*) He stated that Hart had a "temporary marked orthopedic disability,

2

concluded that Hart was incapable of returning to work at that time, and stated that the medication (Vicodin) could impact his functional abilities. (*Id.*) Dr. McIntyre reevaluated plaintiff on September 2, 2008, and noted plaintiff's complaints of pain in his neck and back, radiating into his leg. (*Id.* at 274–75.) Plaintiff was 5'10" tall and weighed 285 pounds. (*Id.* at 275.) He was unable to heel or toe walk, and had difficulty getting on and off the examination table. (*Id.*) The cervical spine had normal flexion, but was limited to 30 of 45 degrees in extension, 20 of 45 degrees in lateral tilting, and 50 of 80 degrees of rotation. (*Id.*) There was no vertebral tenderness to palpitation. (*Id.*) The thoracolumbar spine was limited to 0 degrees of flexion and extension, 10/30 degrees in lateral tilting, and 5/30 degrees of rotation. (*Id.*) Plaintiff's left shoulder was tender and limited to 90/150 degrees of forward elevation, 20/40 degrees of backward elevation, 90/150 degrees of abduction, 20/30 degrees of adduction, 40/90 degrees of external rotation, and 20/40 degrees of internal rotation. (*Id.* at 276.) Muscle strength was 4/5 in the left upper extremity. (*Id.*) Dr. McIntyre diagnosed (1) a cervical strain; (2) a lumbar strain, with possible radiculopathy; and (3) a left shoulder strain and possible cuff tear. (*Id.*) He opined that plaintiff had a temporary moderate orthopedic disability and that plaintiff could return to work, with the limitation that he not lift, push, or pull more than ten pounds, or twist or climb. (*Id.*) Plaintiff also could not operate a motor vehicle. (*Id.*)

An MRI of Hart's lumbar spine on September 24, 2008, revealed mild lumbar levoscoliosis, and a broad-based disc bulge at L5-S1. (*Id.* at 243, 250, 317.) There was no disc herniation, spinal canal stenosis, or foraminal stenosis. (*Id.* at 243.)

Plaintiff saw Dr. McIntyre again on October 14, 2008. (*Id.* at 270.) Plaintiff was unable to heel and toe walk, and had difficulty getting on and off the examination table. (*Id.* at 271.) His physical condition was substantially similar to before. (*See id.*) Dr. McIntyre found no tenderness, heat, swelling erythema, or effusion in the left shoulder. (*Id.*) He again opined that Hart had a temporary moderate orthopedic disability due to a cervical strain, lumbar strain, left shoulder strain, and possible cuff tear. (*Id.* at 272.) Dr. McIntyre opined that plaintiff could return to work with restrictions to no lifting, pushing, or pulling over ten pounds, or twisting or bending or motor vehicle operation. (*Id.*) Plaintiff next saw Dr. McIntyre on November 25, 2008. (*Id.* at 266.) Plaintiff was unable to heel and toe walk and had difficulty getting on and off the examination table. (*Id.* at 267.) Dr. McIntyre's findings and diagnosis remained basically unchanged. (*See id.* at 267–68.) He assessed that plaintiff had a temporary moderate orthopedic disability, but that plaintiff could return to work, with the restrictions that he not lift, push, or pull over ten pounds, or operate a motor vehicle or mechanical equipment. (*Id.* at 268.)

An MRI of Hart's left shoulder on December 30, 2008, showed mild impingement of the supraspinatus tendon and focus of the altered signal in the distal supraspinatus tendon consistent with a partial instrasubstance tear and/or tendinosis. (*Id.* at 244, 251, 318.) There was no evidence of any tear or retraction in the rotator cuff. (*Id.* at 251.)

Plaintiff saw Dr. McIntyre on January 8, 2009. (*Id.* at 262.) Plaintiff could not heel or toe walk. (*Id.*) His cervical spine was limited to 20/45 degrees of flexion, 0/45 degrees in extension, 20/45 degrees in lateral tilting, and 30/80 degrees of rotation. (*Id.* at 263.) There was no vertebral tenderness to

3

palpitation. (*Id.*) The left shoulder was limited to 30/150 degrees of forward elevation, 20/40 degrees of backward elevation, 30/150 degrees of abduction, 10/30 degrees of adduction, 0/90 degrees of external rotation, and 30/40 degrees of internal rotation. (*Id.* at 264.) Although the shoulder was tender, there was no heat, swelling, erythema, or effusion. (*Id.*) Dr. McIntyre again assessed a temporary moderate orthopedic disability. (*Id.*) He stated that Hart could return to work, with the restrictions that he not lift, push, or pull over ten pounds, bend, operate a motor vehicle, or operate mechanical equipment. (*Id.*) Hart next saw Dr. McIntyre on February 17, 2009. (*Id.* at 258.) Hart could heel and toe walk, and get on and off the examination table without difficulty. (*Id.*) Dr. McIntyre generally reiterated his previous diagnoses and recommendations, except that Hart could not lift, push, or pull up to twenty pounds. (*Id.* at 259.)

On March 19, 2009, plaintiff saw Dr. Moosazadeh. (*Id.* at 241.) Plaintiff had stopped physical therapy on his shoulder after seeing improvement. (*Id.*) Dr. Moosazadeh found that plaintiff was alert and oriented, that his lumbar spine was tender in the paravertebral muscles, and that there was a loss of mobility in the axial skeleton. (*Id.*) The lower extremities showed a tension sign at 50 degrees, and the hamstrings were tight, but there were no focal neurological deficits. (*Id.*) Plaintiff's left shoulder was tender, rotator cuff strength was -5/5, and range of motion was restricted, with forward flexion to 160 degrees, abduction to 140 degrees, and rotation to 35 degrees. (*Id.*) Dr. Moosazadeh diagnosed (1) low back pain, but he ruled out a herniated disc and radiculopathy; (2) a cervical spine sprain/strain, but he ruled out a herniated disc or radiculopathy; and (3) a left shoulder sprain/strain, but he ruled out a rotator cuff tear. (*Id.*) He administered an epidural injection to the lumbar spine, prescribed three Vicodin per day, and advised plaintiff to continue physical therapy. (*Id.*) Plaintiff remained "disabled from his employment." (*Id.*)

Plaintiff saw Dr. McIntyre on March 31, 2009. (*Id.* at 245.) He could not heel or toe walk. (*Id.* at 246.) His cervical spine was limited to 20/45 degrees of flexion, 10/45 degrees of extension, 20/45 degrees of lateral tilting, and 50/80 degrees of rotation. (*Id.*) The thoracolumbar spine was limited to 0/90 degrees of flexion, 0/30 degrees of extension, 10/30 degrees of lateral tilting, and 20/30 degrees of lateral rotation. (*Id.*) There was no tenderness, heat, swelling, or effusion in the left shoulder. (*Id.* at 247.) Dr. McIntyre diagnosed a cervical strain, lumbar strain, left shoulder strain, and left shoulder tendinosis. (*Id.*) He concluded that Hart had a "permanent mild orthopedic disability," but that plaintiff could return to work but could not lift, push, or pull over 20 pounds, or bend over. (*Id.*)

Dr. Moosazadeh saw Hart on April 16, 2009. (*Id.* at 240.) Hart appeared alert and oriented, but range of motion of the lumbar spine was decreased, there was tenderness in the paravertebral muscles, the hamstrings were tight, and the left shoulder was stiff. (*Id.*) There were no focal neurological deficits. (*Id.*) Dr. Moosazadeh assessed (1) lower back pain, chronic pain, and axial type pain; (2) cervicalgia, but he ruled out a herniated disc or radiculopathy; and (3) a left shoulder sprain/strain, but no rotator cuff tear. (*Id.*) He continued plaintiff's Vicodin prescription and noted that plaintiff remained "disabled from his employment." (*Id.*) Dr. Moosazadeh's evaluation on May 19, 2009, was similar, but he did not mention that Hart remained disabled from his employment. (*See id.* at 242.)

4

On June 15, 2009, Dr. Moosazadeh found plaintiff's lower back mobility was restricted, tenderness in the paravertebral muscle and spasm with loss of mobility, and pain in the left shoulder. (*Id.* at 282.) He diagnosed (1) a low back pain/injury and a cervical spine injury, but ruled out a herniated disc and radiculopathy; and (2) left shoulder sprain/strain, but no rotator cuff tear. (*Id.*) He prescribed OxyContin and Vicodin and noted that Hart remained "disabled from his employment." (*Id.*) On July 13, 2009, Dr. Moosazadeh noted that Hart was "complaining of constant pain despite increasing the pain medication dose and lumbar intervention" and was considering surgical options. (*Id.* at 283.)

Plaintiff saw Dr. Andrew Merola on July 27, 2009, for "severe, unremitting intractable low back pain with pain shooting in the lower extremities." (*Id.* at 303.) Plaintiff demonstrated a severely antalgic and kyphotic gait pattern, and he had diminished lumbar and lumbosacral ranges of motion, reversal of the lumbar lordosis, and a positive spinal Phalen's maneuver. (*Id.*) Straight leg raising was positive at 50 degrees on the right, and 40 degrees on the left. (*Id.*) Dr. Merola reviewed an MRI but could not use it because it was of poor quality, and so he ordered a new one. (*Id.*) He determined that Hart's signs and symptoms were consistent and concordant with lumbosacral radiculopathy. (*Id.*)

Plaintiff saw Dr. Moosazadeh on August 17, 2009, complaining of difficulty with prolonged sitting, standing, and bending. (*Id.* at 304.) His lumbar spine demonstrated a flattened normal lordosis, spasm in the paravertebral muscle, and loss of mobility in the lumbar spine. (*Id.*) The lower extremity tension sign bilaterally was 60 degrees, and the calf muscle was nontender. (*Id.*) Dr. Moosazadeh did not comment on whether Hart was disabled from work. (*See id.*)

Plaintiff saw Dr. Justin Fernando, a consultative medical examiner, on August 28, 2009. (*Id.* at 285–88.) Hart complained that he was in constant pain, with the pain aggravated by any movement of his body, and that physical therapy and epidural injections had not helped. (*Id.*) Plaintiff exhibited a wide but normal gait and appeared in no acute distress. (*Id.* at 286.) He declined to heel or toe walk or squat, but he needed no help getting on or off the examination table. (*Id.*) The cervical spine was limited to about 15 or 20 degrees of flexion, extension was 0 degrees, lateral flexion was less than 15 degrees bilaterally, and rotary movements were about 30 degrees bilaterally. (*Id.*) There was no cervical or paracervical tenderness, and no spasm. (*Id.*) The shoulders were limited to 90 degrees of abduction and flexion, but Hart had full range of motion in his elbows, forearms, wrists, and fingers bilaterally. (*Id.*) He had full strength in his proximal and distal muscles, and there was no atrophy. (*Id.*) The thoracic spine was limited to 45 degrees of flexion, 0 degrees of extension, 5 degrees of lateral flexion, and 15 degrees of rotary movement. (*Id.* at 287.) Straight leg raising was positive at 15 degrees bilaterally, and in the upright position, positive at 90 degrees on the right, and 75 to 80 degrees on the left. (*Id.*) Dr. Fernando diagnosed Hart with chronic lower back pain, unilateral lumbosacral radiculopathy, chronic pain in the cervical spine with unilateral cervical radiculopathy, and morbid obesity. (*Id.*) He found Hart's

> subjective feeling of pain was all pervasive. There was not a single movement that was done to full extent because of pain that was the result of moving the limbs and moving the trunk; therefore, every bit of the examination was associated with varying degrees of pain. The reflexes were totally flat in the upper

5

and lower extremities at all sites tested. Whether this has any relevance is unclear, but the claimant's problems might have to be decided on the basis of an EMG and other electro-radiological examinations. A physical examination could not pronounce the reason for such severe state of restriction of mobility.

(*Id.*)

On September 24, 2009, Dr. Moosazadeh noted that Hart's medication had provided some improvement, but Hart had a severe dysfunction with standing, bending, and lying down. (*Id.* at 305.) He assessed plaintiff as "totally disabled from his employment." (*Id.*) That same day, Dr. Moosazadeh filled out a Workers' Compensation form stating that Hart was "totally disabled"; he did not list any restricted work opportunities. (*Id.* at 323.) Dr. Moosazadeh's diagnosis was largely unchanged on October 22, 2009. (*Id.* at 306.) Dr. Moosazadeh stated that plaintiff was "temporarily totally disabled from his employment" (*id.*), and he filled out another Workers' Compensation form stating that Hart was "totally disabled" (*id.* at 324). On November 19, 2009, and again on December 17, 2009, Dr. Moosazadeh reiterated his findings and diagnoses and continued to state that the plaintiff was "totally disabled from his employment."[1] (*Id.* at 308, 309.)

An MRI of Hart's lumbar spine on December 30, 2009, showed an L2-L3 left neural foraminal disc herniation approaching the exiting left L2 nerve root, with associated left neural foraminal narrowing. (*Id.* at 314.) There was no evidence of right neural foraminal encroachment or deformity of the thecal sac. (*Id.*) The MRI also showed a L5/S1 grade 1 spondylolisthesis and a disc bulge abutting the anterior margin of the thecal sac. (*Id.*)

Dr. Merola reviewed the MRI on January 4, 2010. (*Id.* at 310.) He found a small scoliosis and disc bulges throughout the lumbar spine, with some neuroforaminal encroachment and some facet joint arthopathy. (*Id.*) Given the complaints, symptoms, and the MRI, Dr. Merola assessed "rather significant derangement of the low back for which [plaintiff] continues to require medications and treatment by Dr. Moosazadeh." (*Id.*) Dr. Merola found no need for surgical intervention. (*Id.*)

Plaintiff saw Dr. Moosazadeh on January 26, 2010. (*Id.* at 311.) Dr. Moosazadeh found that lumbar mobility was restricted 20%, but that there was no evidence of a focal neurologic deficit. (*Id.*) He deemed plaintiff "disabled from his employment" and instructed plaintiff on appropriate limitations on prolonged sitting, standing, bending, and lifting objects more than twenty pounds. (*Id.*) Dr. Moosazadeh reiterated his findings on February 24, 2010. (*Id.* at 312.) He stated that Hart remained "totally disabled from his employment" and advised plaintiff on losing weight, modifying his daily activity, and home exercise. (*Id.*) Dr. Moosazadeh reached similar conclusions on March 24, 2010. (*Id.* at 313.) By that date, Hart had lost full mobility of the axial skeleton of 30 to 40 percent, lower extremity tension sign bilaterally was 60 degrees, and a FABER test was positive. (*Id.*)

Dr. Moosazadeh filled out a "Medical Assessment of Ability to do Work Related Activities" on April 20, 2010. (*Id.* at 339–41.) Hart could lift and carry up to five pounds occasionally (up to 1/3 of an 8-hour day), based on his lumbar/cervical

---

[1] These evaluations did not include specific details about the degrees of flexion, extension, rotation, etc.

sprain/strain, lumbar disc bulge/herniation, and shoulder sprain/strain. (*Id.* at 339.) Dr. Moosazadeh assessed that plaintiff could not stand, walk, or sit at all during the day because of his lumbar disc bulge and herniation. (*Id.* at 339–40.) Hart also could never climb, stoop, kneel, balance, crouch, or crawl. (*Id.* at 340.) He was limited in reaching, pushing, and pulling, particularly overhead, but he had no environmental limitations. (*Id.* at 341.)

Hart next saw Dr. Moosazadeh on May 24, 2010, and reported continued lower back pain, and difficulty performing ambulatory activities and activities of daily living. (*Id.* at 355.) Dr. Moosazadeh noted that Hart was overweight, and had lost full mobility in the paraxial muscle. (*Id.*) Lumbar mobility was restricted 30 percent. (*Id.*) Dr. Moosazadeh diagnosed a cervical/lumbar spine sprain/strain, but he ruled out a herniated disc or radiculopathy. (*Id.*) He also found a left shoulder injury, but he ruled out a traumatic instability or impingement. (*Id.*) On June 30, 2010, Dr. Moosazadeh reiterated most of his findings and diagnoses and stated that Hart "is considered totally disabled and also based on chronicity of his condition, he has permanent, mild, partial disability." (*Id.* at 356.)

On July 6, 2010, Dr. Anthony Spataro, an orthopedic surgeon, performed an independent medical examination for the Workers' Compensation Board. (*Id.* at 345.) He found that plaintiff's cervical spine was limited to 10/40 degrees of lateral flexion bilaterally, 15/70 degrees of rotation bilaterally, 5/60 degrees of forward flexion, and 10/30 degrees of flexion. (*Id.*) There was a mildly positive Spurling maneuver, and deep tendon reflexes were diminished bilaterally. (*Id.*) Sensation was diminished bilaterally, and motor function was 4/5 in both upper extremities. (*Id.*) The thoracolumbar spine was limited to 20/90 degrees of forward flexion, 10/25 degrees of extension, 15/25 degrees of lateral flexion bilaterally, and 20/30 degrees of rotation bilaterally. (*Id.*) Plaintiff had trouble standing on his heels and toes, and straight leg raising was negative bilaterally. (*Id.*) Plaintiff's left shoulder was not tender or deformed, but range of motion was limited to 90/180 degrees of forward flexion, 40/45 degrees of internal rotation, and 50/45 degrees of external rotation. (*Id.* at 347.) Dr. Spataro diagnosed chronic cervical and lumbar disc syndrome, and left shoulder derangement. (*Id.*) He found that plaintiff had a permanent total disability. (*Id.*) On follow up with Dr. Moosazadeh on July 28, 2010, plaintiff's condition remained unchanged, and Dr. Moosazadeh wrote that plaintiff remained "totally disabled from his employment." (*Id.* at 357.)

The record evidence for after this period is immaterial to the Court's analysis.

3. The Administrative Hearing

Plaintiff testified before the ALJ on February 2, 2011. Plaintiff said his pain occurred in his lower back, going down his left buttock and into his leg. (*Id.* at 83.) He also had pain from his neck, through his left shoulder, into his left arm. (*Id.*) Plaintiff said he could barely walk one block without experiencing pain. (*Id.*) He also could not stand for more than 10 or 15 minutes, could not bend or kneel, and could sit for only 20 minutes at a time. (*Id.* at 85–86.) The most he could lift was 5 pounds. (*Id.* at 92) He had trouble moving his head side to side, and could not rotate his neck more than 45 degrees. (*Id.* at 95.)

At a supplemental hearing on August 11, 2011, the ALJ called Jennifer Dizon to testify as a vocational expert. (*Id.* at 43.) Dizon testified that plaintiff's past relevant work was classified in the Dictionary of Occupational Titles as a railroad conductor,

which is light in exertion, and has a specific vocational preparation of eight, which is skilled. (*Id.* at 45.) Plaintiff's skills, including speaking, communicating, gathering correct information, writing, problem solving, identifying specific problems, and monitoring the operation of a vehicle, were transferrable. (*Id.*) The ALJ asked the expert whether a person of plaintiff's age (44 to 47), education (high school graduate), and with the residual functional capacity for sedentary work would be able to perform plaintiff's past relevant work. (*Id.* at 46–47.) Dizon testified that the person could not perform the prior work with those functional restrictions. (*Id.* at 47.) Next, the ALJ asked whether a person could perform plaintiff's past relevant work where the person was limited to moving his neck less than 45 degrees, could not write repetitively, could not perform overhead activities with his left hand, and was limited to lifting and carrying less than five pounds, and who could not climb, balance, stoop, kneel, crouch, or crawl, but who could sit for six hours, and stand and walk for two hours per day. (*Id.* at 48–49.) The expert testified that such a person could not perform plaintiff's past relevant work or any other jobs. (*Id.* at 49.)

### B. Procedural History

On June 22, 2009, plaintiff applied for disability insurance benefits, alleging disability since June 19, 2009. (*Id.* at 188–90.) On October 13, 2009, plaintiff requested an administrative hearing. Represented by counsel, plaintiff appeared and testified before the ALJ on February 2, 2011. (*Id.* at 59–108.) The ALJ held a supplemental hearing on August 11, 2011. (*Id.* at 35–56.) On September 14, 2011, the ALJ issued a partially favorable decision, concluding that plaintiff was disabled under the SSA as of July 6, 2010.[2] (*Id.* at 13–28.) The Appeals Council denied plaintiff's request for review on February 28, 2013.

Plaintiff commenced this action on April 23, 2013, appealing the ALJ's September 14, 2011 decision. The Commissioner answered on August 26, 2013, and filed the pending motion for judgment on the pleadings on November 21, 2013. Plaintiff also filed a motion for a judgment on the pleadings on January 2, 2014. Neither party has filed a reply.

### II.   STANDARD OF REVIEW

A district court may set aside a determination by an ALJ "only where it is based upon legal error or is not supported by substantial evidence." *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)). The Supreme Court has defined "substantial evidence" in Social Security cases to mean "more than a mere scintilla" and that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted); *see Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). Furthermore, "it is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If the court finds that there is substantial evidence to support the Commissioner's determination, the decision must be upheld, "even if [the court] might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (internal citation and quotation marks omitted); *see also Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) ("Where an administrative decision rests on adequate findings sustained

---

[2] The Court summarizes the ALJ's decision *infra*.

by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner.").

### III. DISCUSSION

#### A. Legal Standard

A claimant is entitled to disability benefits if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual's physical or mental impairment is not disabling under the SSA unless it is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

The Commissioner has promulgated regulations establishing a five-step procedure for evaluating disability claims. *See* 20 C.F.R §§ 404.1520, 416.920. The Second Circuit has summarized this procedure as follows:

> The first step of this process requires the [Commissioner] to determine whether the claimant is presently employed. If the claimant is not employed, the [Commissioner] then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the [Commissioner] next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the [Commissioner] will find the claimant disabled. However, if the claimant does not have a listed impairment, the [Commissioner] must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the [Commissioner] determines whether the claimant is capable of performing any other work.

*Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). The claimant bears the burden of proof with respect to the first four steps; the Commissioner bears the burden of proving the last step. *Brown*, 174 F.3d at 62.

The Commissioner "must consider" the following in determining a claimant's entitlement to benefits: "'(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience.'" *Id.* (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam)).

#### B. Analysis

Plaintiff argues that the ALJ's decision is the result of legal error because the ALJ did not follow the treating physician rule when she discounted the records and findings of Dr. Moosazadeh. Plaintiff, in the alternative, seeks a remand in order to re-contact the treating physician and have him appear before the ALJ. For the reasons set forth below, the Court concludes that additional development of the record is necessary. Specifically, clarification is needed from the treating physician regarding his opinion of the disability onset date and the basis for that determination.

9

### 1. The ALJ's Decision

Here, in concluding that plaintiff was not disabled under the SSA until July 6, 2010, the ALJ adhered to the five-step sequential analysis for evaluating applications for disability benefits. (*See* AR 15–28.)

#### a. Substantial Gainful Activity

At step one, the ALJ must determine whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity is work activity that involves doing significant physical or mental activities," *id.* § 404.1572(a), and gainful work activity is work usually done for pay or profit, *id.* § 404.1572(b). Individuals who are employed are engaging in substantial gainful activity. Here, the ALJ determined that plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 19, 2008. (AR 15.) Substantial evidence supports this finding, and plaintiff does not challenge its correctness.

#### b. Severe Impairment

At step two, if the claimant is not employed, the ALJ determines whether the claimant has a "severe impairment" that limits his capacity to work. An impairment or combination of impairments is "severe" if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c); *see also Perez*, 77 F.3d at 46.

Here, the ALJ found that plaintiff had the following severe impairments diagnosed prior to July 6, 2010: low back pain, a cervical spine sprain/strain, and a left shoulder sprain strain, but no herniated disc, radiculopathy, or rotator cuff tear. (AR 15.) The ALJ further stated that as of July 6, 2010, the diagnoses were chronic low back pain, lumbar disc herniations at L2-L3 approaching the exiting left L2 nerve root with left foraminal narrowing and L5-S1 grade 1 spondylolisthesis, levoscolios, chronic cervical and lumbar disc syndrome, left shoulder derangement, and morbid obesity. (*Id.*) Substantial evidence supports these findings, and plaintiff does not challenge their correctness.

#### c. Listed Impairment

At step three, if the claimant has a severe impairment, the ALJ next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the ALJ will find the claimant disabled without considering the claimant's age, education, or work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ found that none of these impairments, alone or in combination, met or medically equaled the severity of the listed impairments in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 16.) Substantial evidence supports this finding, and plaintiff does not challenge its correctness.

#### d. Residual Functional Capacity

At step four, having found that that the severe impairments did not meet or equal a listed impairment, the ALJ assessed the claimant's residual functional capacity "based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). At this stage, the ALJ must then determine whether, based on the claimant's residual functional capacity, the claimant can perform her past relevant work. *Id.* § 404.1520(f). When the claimant can perform her past relevant work, the ALJ will find that she is not disabled. *Id.*

In this case, the ALJ found that, prior to July 6, 2010, plaintiff "had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR

404.1567(a). . . . However, as of July 6, 2010, claimant did not have a residual functional capacity for a full range of sedentary work" and could not perform any past relevant work for the period in question.[3] (AR 16, 26.) According to the ALJ, before July 6, 2010, plaintiff could sit for six hours in an eight-hour day, stand and walk for two hours, and lift ten pounds occasionally. (*Id.* at 16.) As of July 6, 2010, however, plaintiff could not sit, stand, or walk for more than four hours in an eight hour day; could not lift more than ten pounds frequently; could only occasionally reach overhead with his left dominant hand; could only occasionally reach, handle, finger, feel, push, or pull with his dominant left hand; and could not walk a block at a reasonable pace on rough and uneven surfaces. (*Id.*) In reaching this conclusion, the ALJ performed a lengthy recitation of the medical evidence, and concluded that, "prior to July 6, 2010, the record does not contain objective medical evidence of physical limitations so severe that they would prevent the claimant from performing a full range of sedentary work." (*Id.* at 20.)

The ALJ found that plaintiff's assertions concerning his symptoms and limitations were not corroborated by objective medical evidence before July 6, 2010. (*Id.* at 23.) The ALJ reasoned that "[p]rior to the found onset date, other than claimant's subjective complaints of pain, there was no evidence that [his sprains/strains] resulted in limitations so severe that the claimant could not engage in any work activity." (*Id.*) She noted that Dr. Fernando's examination did not reveal the reason for plaintiff's severe restriction of mobility. (*Id.*)

The ALJ first cited Dr. McIntyre's reports in 2008 and 2009, none of which concluded that plaintiff "was totally limited from all work activity," rather than only his past work as a conductor. (*Id.* at 21.) The ALJ also noted that Dr. Moosazadeh's notes and report from July 2008 suggested a cervicolumbar spine sprain/strain, a left shoulder sprain/strain, traumatic impingement, and a rotator cuff tear, but "at no time was it found that claimant had more than a sprain/strain." (*Id.*) The rotator cuff tear and herniations were not established. (*Id.*) In addition, the September 2008 MRI indicated a mild lumbar levoscoliosis and a L5-S1 broad based disc bulge only. (*Id.*) According to the ALJ, this and other medical evidence, such as the reports from Dr. Merola and Dr. Fernando in July and August 2009, respectively, established that none of the diagnoses through at least late 2009 supported a finding of total disability. (*See id.* at 21–22.) The MRI of the lumbar spine in December 2009 first established a left neural foraminal disc herniation with associated left neural foraminal narrowing, a grade 1 spondylolisthesis and disc bulge, and levoscoliosis. (*Id.* at 22.)

The ALJ then accorded significant weight to Dr. Spataro's analysis on July 6, 2010, and his opinion that plaintiff had reached his maximum medical improvement and that he had a permanent total disability. (*Id.* at 23, 26.) The ALJ reasoned that Dr. Spataro's report provided objective evidence of plaintiff's functional limitations and neurological deficits. (*Id.* at 23.) On the other hand, the ALJ gave "less than great or controlling weight" to Dr. Moosazadeh, and especially his April 20, 2010 assessment. (*Id.* at 25; *see id.* at 22.) She found that Dr. Moosazadeh did not supply the degree of the positive straight leg raising test or the

---

[3] "[I]n the Social Security context, a person must be able to lift ten pounds occasionally, sit for a total of six hours, and stand or walk for a total of two hours in an eight-hour workday to be capable of 'sedentary work.'" *Carvey v. Astrue*, 380 F. App'x 50, 52 (2d Cir. 2010) (citing *Rosa v. Callahan*, 168 F.3d 72, 78 n.3 (2d Cir. 1999); 20 C.F.R. § 404.1567(a)).

limitations of the lumbar back and shoulder, presented no objective neurological findings to support the opinion that plaintiff was restricted to less than a full range of sedentary work, and "merely opined without providing findings to support the opinion that the claimant was unable to do overhead activities with his left shoulder and could not push, pull or lift more than 5 pounds." (*Id.* at 22.) The ALJ compared Dr. Moosazadeh's findings of a sprain/strain to Dr. Spataro's extensive observations regarding the "objective degrees of limitations of the back and shoulder [and] neurological deficits of sensory and motor." (*Id.* at 25.)

For the reasons set forth *infra*, the Court discerns legal errors in connection with the ALJ's assessment of plaintiff's residual functional capacity, and, in light of those errors, a remand is necessary because the Court cannot determine whether substantial evidence supports the decision. *See Branca v. Comm'r of Soc. Sec.*, No. 12-CV-643 (JFB), 2013 WL 5274310, at *11 (E.D.N.Y. Sept. 18, 2013).

e. Other Work

At step five, if the claimant is unable to perform her past relevant work, the ALJ determines whether the claimant is capable of adjusting to performing any other work. 20 C.F.R. § 404.1520(g). To support a finding that an individual is not disabled, the Commissioner has the burden of demonstrating that other jobs exist in significant numbers in the national economy that claimant can perform. *Id.* § 404.1560(c); *see, e.g.*, *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

Here, the ALJ considered plaintiff's age, education, work experience, and residual functional capacity, in connection with the Medical-Vocational Guidelines set forth at Appendix 2 of Part 404, Subpart P of Title 20 of the Code of Federal Regulations. The ALJ found that (1) before July 6, 2010, there was work in the national economy which plaintiff could perform, based on Medical-Vocational Rule 202.21; and (2) after July 6, 2010, there were no jobs that plaintiff could perform, and therefore that plaintiff was disabled. (AR 27–28.)

2. Treating Physician Rule

Plaintiff argues the ALJ failed to accord the proper weight to his treating physician, Dr. Moosazadeh. The Court agrees that the ALJ should have re-contacted Dr. Moosazadeh to help clarify his medical opinion, and remands the case on this basis.

a. Legal Standard

The Commissioner must give special evidentiary weight to the opinion of a treating physician. *See Clark*, 143 F.3d at 118. The "treating physician rule," as it is known, "mandates that the medical opinion of a claimant's treating physician [be] given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); *see, e.g.*, *Rosa*, 168 F.3d at 78–79; *Clark*, 143 F.3d at 118. The rule, as set forth in the regulations, provides:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a

treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).

Although treating physicians may share their opinion concerning a patient's inability to work and the severity of disability, the ultimate decision of whether an individual is disabled is "reserved to the Commissioner." *Id.* § 404.1527(d)(1); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[T]he Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability.").

When the Commissioner decides that the opinion of a treating physician should not be given controlling weight, she must "give good reasons in [the] notice of determination or decision for the weight [she] gives [the claimant's] treating source's opinion." 20 C.F.R § 404.1527(c)(2); *see Perez v. Astrue*, No. 07-CV-958 (DLI), 2009 WL 2496585, at *8 (E.D.N.Y. Aug. 14, 2009) ("Even if [the treating physician's] opinions do not merit controlling weight, the ALJ must explain what weight she gave those opinions and must articulate good reasons for not crediting the opinions of a claimant's treating physician."); *Santiago v. Barnhart*, 441 F. Supp. 2d 620, 627 (S.D.N.Y 2006) ("Even if the treating physician's opinion is contradicted by substantial evidence and is thus not controlling, it is still entitled to significant weight because the treating source is inherently more familiar with a claimant's medical condition than are other sources." (internal citation and quotation marks omitted)). Specifically, "[a]n ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). "Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Id.* (citing 20 C.F.R. § 404.1527(d)(2)). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell*, 177 F.3d at 133.

Moreover, the lack of specific clinical findings in the treating physician's report, in and of itself, is insufficient to support an ALJ's failure to credit the treating physician's opinion. *Schaal*, 134 F.3d at 505; *accord Clark*, 143 F.3d at 118. "Furthermore, the ALJ has the duty to 'recontact' a treating physician for clarification if the treating physician's opinion is unclear." *Stokes v. Comm'r of Soc. Sec.*, No. 10-CV-0278 (JFB), 2012 WL 1067660, at *11 (E.D.N.Y. Mar. 29, 2012) (quoting *Ellett v. Comm'r of Soc. Sec.*, No. 1:06–CV–1079 (FJS), 2011 WL 1204921, at *7 (N.D.N.Y. Mar. 29, 2011)); *see also Mitchell v. Astrue*, No. 07 Civ. 285(JSR), 2009 WL 3096717, at *17 (S.D.N.Y. Sept. 28, 2009) ("If the opinion of a treating physician is not adequate, the ALJ must 'recontact' the treating physician for clarification." (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)). Such an obligation is linked to the ALJ's affirmative

13

duty to develop the record.[4] *See Perez*, 77 F.3d at 47.

### b. Analysis

Having carefully reviewed the record, the Court concludes that Dr. Moosazadeh's April 20, 2010 evaluation, and subsequent opinions regarding plaintiff's disability are unclear and require further clarification. It is evident that the ALJ also found Dr. Moosazadeh's opinions to be unclear, as she noted that Dr. Moosazadeh "did not supply sufficient objective medical findings," and that "there were no neurological findings of sensory or motor loss and deep tendon reflex loss" until Dr. Spataro's analysis. (AR 25.) Instead, the ALJ gave more weight to Dr. Spataro's July 8, 2010 analysis. Because of the conflict in the record between Dr. Spataro's opinion and Dr. Moosazadeh's opinion, the Court cannot conclude, as plaintiff urges, that the ALJ was required to give controlling weight to Dr. Mossazadeh's opinion.

However, the ALJ misapplied the treating physician rule, under the particular circumstances of this case, because she did not recontact the treating physician for clarification of the reasons for the opinion. As noted above, the lack of specific clinical findings is, by itself, not a sufficient basis to ignore the treating physician's opinion. Here, Dr. Moosazadeh treated the plaintiff for an extended period of time, beginning on July 8, 2008. He performed physical examinations each time he saw plaintiff, and conducted numerous tests during his treatment of plaintiff, including tests noting tenderness in the paravertebral muscles of the lumbar and cervical spines, lower extremity tension sign tests demonstrating tightness of the hamstrings, lumbar mobility testing, straight leg raise testing, axial compression tests, Spurling sign tests, Hawkins tests, and impingement tests of the left dominant shoulder. (*See* AR 240–336.) Moreover, Dr. Moosazadeh ordered and reviewed several MRI reports of the left shoulder and lumbar spine. (*Id.* at 243–44, 337.) Throughout his treatment of plaintiff, Dr. Moosazadeh consistently noted that plaintiff was disabled from his employment. (*E.g.*, *id.* at 240–42, 282.) Given Dr. Moosazadeh's longstanding treatment of plaintiff and the physical examinations and tests that he performed, the ALJ should have recontacted Dr. Moosazadeh before rejecting his opinion because he did not supply sufficient objective medical findings. The need for a remand is especially appropriate here because, although the ALJ determined that plaintiff became totally disabled only as of July 6, 2010, based upon the examination and accompanying report of Dr. Spataro, there is no specific intervening event that would provide a clear explanation as to how Hart's condition worsened as of that specific date. Thus, in light of the ALJ's conclusion that Dr. Moosazadeh's opinion lacked sufficient objective findings, a remand is necessary so that Dr. Moosazadeh can be recontacted and be given the opportunity to supplement the record with any additional objective findings or bases for his longstanding opinion regarding plaintiff's onset date. Once Dr. Moosazadeh is recontacted and given that opportunity, the ALJ can again examine Dr. Moosazadeh's opinion in light of all the evidence in the record, including Dr. Spataro's and Dr. McIntyre's respective findings. *See Schaal*, 134 F.3d at 505

---

[4] It is well established that the ALJ must "'[a]ffirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.'" *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)). The ALJ's regulatory obligation to develop the administrative record exists even when the claimant is represented by counsel or by a paralegal at the hearing. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte*."); *see also Papadopoulos v. Astrue*, No. 10 Civ. 7980(RWS), 2011 WL 5244942, at *8 (S.D.N.Y. Nov. 2, 2011) ("Because 'further findings' would so plainly help to assure the proper disposition of [plaintiff's] claim, remand is appropriate in this case." (quoting *Pratts*, 94 F.3d at 39)); *Taylor v. Astrue*, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) ("[A]lthough an ALJ may elect not to assign controlling weight to the opinion of a treating physician where it is not well-supported by objective evidence, before reaching this conclusion, 'the adjudicator must make every reasonable effort to recontact the [treating physician] for clarification of the reasons for the opinion.'" (quoting Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *6 (S.S.A. July 2, 1996))); *Ewald v. Comm'r of Soc. Sec.*, No. CV-05-4583 (FB), 2006 WL 3240516, at *2 (E.D.N.Y. Nov. 9, 2006) ("[E]ven if correct evaluation of the medical records revealed inadequate support for [the treating physician's] opinion, the ALJ's duty was to recontact [the treating physician] . . . to fully develop the record.").

In sum, the Court concludes that clarification from Dr. Moosazadeh was necessary to assist the ALJ in determining the date of total disability. In light of the ALJ's affirmative duty to develop the record and the need to clarify the bases for Dr. Moosazadeh's opinion regarding the onset date of the total disability, the ALJ had a duty to recontact Dr. Moosazadeh. On remand, the ALJ is directed to recontact Dr. Moosazadeh for clarification of his opinions, and, to the extent necessary, further develop the record to obtain any additional information regarding plaintiff's condition during the relevant time period.

IV. CONCLUSION

For the reasons set forth above, the Commissioner's motion for judgment on the pleadings is denied. Plaintiff's cross-motion for judgment on the pleadings is denied, but plaintiff's motion to remand is granted. The case is remanded to the ALJ for further proceedings consistent with this Memorandum and Order.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Date: September 30, 2014
Central Islip, NY

\* \* \*

Plaintiff is represented by Michael Brangan of Sullivan & Kehoe, 44 Main Street, Kings Park, NY 11754. The Commissioner is represented by Loretta E. Lynch, United States Attorney, Eastern District of New York, by Vincent Lipari, 610 Federal Plaza, Central Islip, NY 11722.

15